1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS VITRANO, BELINDA VITRANO, and JOHN SANTOS<br><br>Plaintiffs,<br><br>v.<br><br>SANTANDER CONSUMER USA, INC.<br><br>Defendant. | Case No. CV 13-02492-AB (MRWx)<br><br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Pending before the Court is Plaintiffs Thomas Vitrano, Belinda Vitrano, and John Santos' Motion for Final Approval of Class Action Settlement Agreement and Motion for Attorneys' Fees, Costs, and Expenses ("Motions").  (Mot., Fees Mot., Dkt. Nos. 68, 75.)  Defendant Santander Consumer USA did not oppose the Motions.  The Motions were heard before the Court on February 2, 2015.  After considering the materials submitted and oral argument, the Court hereby **GRANTS** both Motions.

## I.    FACTUAL AND PROCEDURAL HISTORY

This action arises out of Plaintiffs' class action alleging violations of California's Rees-Levering Automobile Sales Finance Act against Defendant.  Cal. Civil Code § 2981 *et seq*.  Defendant is an automobile lender that accepts assignments of conditional sales contracts from other California car dealers.  (Mot., p. 2.)  Under the regulations of the Rees-Levering Act, Plaintiffs alleged that, after repossessing the borrowers' vehicles, Defendant failed to provide borrowers with the statutorily mandated disclosures of their legal rights.  *See* Cal. Civil Code § 2981(a).  As discussed below, after extensive litigation and a day of mediation, the Parties arrived at this Settlement before the Court.

On October 20, 2014, this Court preliminarily approved the Class Settlement under the requirements of Federal Rule of Civil Procedure ("Rule") 23(e).  (Dkt. No. 56.)  The Court also ordered that notice of the pending Settlement be distributed pursuant to the Settlement Agreement, and set a fairness hearing on February 2, 2015 for the final approval of the Settlement.  (*Id*. at p. 3.)

The Parties published notice of the proposed Settlement to provide notification to any of the individual class members.  (*Id*. at p. 3.)  Plaintiffs now seek final approval of the Settlement.  (*See* Mot.)  Plaintiffs' Counsel also seeks Court approval for its requested attorneys' fees, costs and expenses of $350,000.00 and also the Service Awards totaling $2,500.00 for the three (3) Class Representatives.  (*See* Fees Mot.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(e)(1)(A) states that "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class."  In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998)(quotation omitted); *Class Plaintiffs*

2.

*v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Consequently, in making its assessment pursuant to Rule 23(e), the Court's:

> intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Thus, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted).  This ultimate decision is within the "sound discretion of the district courts [which] appraise[s] the reasonableness of particular class-action settlements on a case-by-case basis. . . ." *Evans v. Jeff D.*, 475 U.S. 717, 742, 106 S.Ct. 1531, 1545 (1986).  While a court is charged with reviewing the merits of a settlement in accordance with the various factors referenced herein, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625.  On the other hand, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place, create a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, Nos. C–96–3008 DLJ, C–97–0203 DLJ, C–97–0425 DLJ, C–97–0457 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997),

3.

1  *aff'd.* 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15,

2  18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

3        The purpose of the fairness hearing is to permit the court to determine whether

4  a proposed class action settlement is fundamentally fair, adequate, and reasonable.

5  *Hanlon*, 150 F.3d at 1026.  To determine whether a proposed settlement is fair,

6  adequate, and reasonable, a court may consider "some or all" of the following factors:

7  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely

8  duration of further litigation; (3) the risk of maintaining class action status throughout

9  the trial; (4) the amount offered in settlement; (5) the extent of discovery completed

10  and the stage of the proceedings; (6) the experience and views of counsel; (7) the

11  presence of a governmental participant; and (8) the reaction of the class members to

12  the proposed settlement.  *Linney*, 151 F.3d at 1242; *Torrisi*, 8 F. 3d at 1375.  "This list

13  is not exclusive and different factors may predominate in different factual contexts."

14  *Id.* at 1376 (citation omitted).

15        Thus, the court's analysis is not whether the settlement agreement could have

16  been better.  Rather, the role of the court is to ascertain whether the proposed

17  settlement is fair, reasonable and adequate.  *See Hanlon*, 150 F.3d at 1027.  With

18  respect to this standard, it is well-settled law that "a proposed settlement may be

19  acceptable even though it amounts to only a fraction of the potential recovery that

20  might be available to the class members at trial."  *See National Rural*

21  *Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.

22  2004), *see also Linney*, 151 F.3d at 1242.

23    **III.    DISCUSSION**

24        On September 16, 2014, the Parties filed a Motion for a Class Settlement and

25  moved this Court for preliminary approval.  (Dkt. No. 51.)  The Court gave its

26  preliminary approval to the Settlement on October 20, 2014, and ordered that Notice

27  be sent to class members.  (Dkt. No. 56.)  Using Heffler Claims Group as the Class

28  Administrator, approximately 38,698 Class Notices and Request for Exclusion forms

1    were sent out to class members.  (Sandra Pappas Declaration, Dkt. No. 75, Ex. 2 ¶ 14.)

2    The Notice informed the class of, *inter alia*, the nature of the litigation, the terms of

3    the Settlement, and an exclusion form for class members that request to be omitted

4    from the Settlement.  (*Id*. at ¶ 5.)  The exclusion form established January 3, 2015

5    (postmarked), as the deadline to exclude oneself from the class or to object to the

6    Settlement.  As of this date, Heffler has received thirty-five (35) requests for

7    exclusions and one (1) objection to the Settlement.  (*Id*. at ¶¶ 15-16.)

8        **A. Terms of the Settlement**

9        Pursuant to the Settlement, Defendant is required to relieve approximately

10   38,698 class members either monetarily or through injunctive relief.  (Mot., p. 6.)

11   More particularly, Defendant shall (1) repurchase class members' deficiency accounts

12   from third party creditors; (2) cease from collection activity with regard to any of the

13   class members' deficiency accounts and be enjoined from any further collection

14   attempts; (3) change the class members' deficiency accounts to reflect a zero balance;

15   (4) refund sixty percent (60%) of the collected $712,778.00 deficiency balances to the

16   class members; (5) instruct several credit reporting agencies to delete class members'

17   trade lines; and (6) pay a service award of $2,500.00 to each Class Representative and

18   fees award of $350,000.00 to Class Counsel for attorneys' fees, costs, and expenses.[1]

19   (*See* Appendix A.)

20       **B. The Proposed Settlement Is Fair, Adequate, And Reasonable**

21       Upon review of the Settlement, consideration of the objections herein, and the

22   application of the legal standard, the Court finds that the proposed Settlement

23   Agreement is fair, adequate, and reasonable.

24       **1.  The Class Satisfies Rule 23 Certification Requirements**

25       After reviewing Plaintiffs' arguments in support of class certification, the Court

26   concludes that Plaintiffs have met their burden as to the prerequisites for class

27

28   ---
     [1] The Settlement Terms are more fully stated in the proposed order attached in Appendix A.

1    certification set forth in Rule 23(a) and (b)(3).

2          Particularly, the class consists of 38,698 class members.  (Mot., p. 6.)  Thus,

3    joinder is impractical due to numerosity, and continuing as a class is the superior

4    method in litigating this large-scale claim.  With respect to commonality, the class is

5    defined as all consumers who "purchased a motor vehicle and, as part of that

6    transaction, entered into an agreement subject to California's Rees-Levering

7    Automobile Sales Finance Act, Civil Code §2981, *et seq.*"  (Dkt. No. 76, pp. 2-3.)

8    Typicality is satisfied because the common facts as to the class create liability for

9    claims typical to the Rees-Levering Act.  Lastly, the Court approves Plaintiffs and

10   Plaintiffs' Counsel as adequate Class Representatives and certifies the class for the

11   purpose of this Settlement only.  (Mot., pp. 9-12.)

12         The class members are described as all consumers:

13              (a) [who] purchased a motor vehicle and, as part of that
14              transaction, entered into an agreement subject to California's
15              Rees-Levering Automobile Sales Finance Act, Civil Code
                §2981, *et seq.*;
16
17              (b) whose motor vehicle was repossessed or voluntarily
                surrendered;
18
19              (c) who were issued a NOI by [Defendant] from July 1, 2011 to
                July 31, 2014 or to whom [Defendant] failed to provide an NOI
20              within 60 days of repossession; and

21
22              (d) against whose account a deficiency balance was assessed.
                Excluded from the Settlement Class are: (a) persons who have
23              had their deficiency balances discharged by an order of a
                bankruptcy court; and (b) any persons against whom
24              [Defendant] has obtained a deficiency judgment.

25   (Dkt. No. 76, pp. 2-3.)

26

27

28

1
2
3

**2. The Settlement is Fair, Adequate, and Reasonable, Given the Extent of Discovery and Information Exchanged Between the Parties and the Quality of the Settlement Negotiations.**

4       Although "extensive formal discovery had not been completed . . . 'in the
5   context of class action settlements, formal discovery is not a necessary ticket to the
6   bargaining table' where the parties have sufficient information to make an informed
7   decision about settlement." *See In re Mego*, 213 F.3d at 459 (citing *Linney*,151 F.3d
8   at 1239 and *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)
9   (quotation marks omitted)).

10      As set forth in Plaintiffs' Motion for Attorneys' Fees, the Settlement was
11  reached with the help of the Honorable Edward A. Infante of Judicial Arbitration and
12  Mediation Services, Inc. ("JAMS").  (Fees Mot., p. 3.)  Class Counsel participated in a
13  full-day mediation, which consisted of extensive negotiations.  (*See* Kemnitzer Decl.,
14  ¶¶ 2-4; Mot., p. 3.)  When settlements are reached with the assistance of a mediator,
15  the presence of collusion is less likely.  *Satchell v. Fed. Express Corp.*, Nos. C03-
16  2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The
17  assistance of an experienced mediator in the settlement process confirms that the
18  settlement is non-collusive.").  As articulated in Mr. Kemnitzer's declaration, the
19  negotiation process was entirely arms-length, and the parties conducted sufficient
20  discovery before fully considering the possible outcomes of the case.  (*See* Kemnitzer
21  Declaration , Dkt. No. 69, ¶ 4; *see also* Mot., p. 13 ¶ 1.)  Accordingly, the Court finds
22  that this factor weighs in favor of final approval.

23      **3. The Settlement Is Fair, Adequate, and Reasonable Because of the**
24          **Experience and Views of Counsel.**

25      The Ninth Circuit recognizes that "[p]arties represented by competent counsel
26  are better positioned than courts to produce a settlement that fairly reflects each
27  party's expected outcome in litigation."  *In re Pacific Enterprises Securities*
28  *Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).  If Class Counsel is "well respected in

1  their respective fields . . . [t]heir opinion that the settlement is fair, adequate, and

2  reasonable is entitled to significant weight." *In re Manufacturers Life Ins. Co.*

3  *Premium Litigation*, No. 1109, 96–CV–230 BTM (AJB), 1998 WL 1993385, at *7

4  (S.D. Cal. 1998).

5     In this case, Plaintiffs lead counsel is Kemnitzer, Barron & Krieg.  This firm

6  has litigated consumer protection cases since 1986.  (*See* Kemnitzer Decl., ¶ 15.)

7  Kemnitzer, Barron & Krieg's mission is to advocate for the rights of people who have

8  disputes with automobile manufacturers, auto dealers, and auto finance lenders.  (*Id*. at

9  ¶ 22.)  Trueblood Law Firm and the Law Offices of Brandon Block also represent the

10  class.  (*See* Trueblood; Block Declarations, Dkt. Nos. 70, 71.)  Both firms have

11  reputable practices within the realm of consumer protection statutes.  (*Id*.)  Thus, the

12  Court recognizes that a well-established and well-respected Counsel represents the

13  class, and their opinions, especially Lead Counsel, of this Settlement should be

14  afforded great weight.  In all, the experience of Class Counsel, and the nature and

15  quality of the negotiations, weigh greatly in favor of the Court's final approval of the

16  Settlement.

17      **4.  The Reaction of Class Members to the Proposed Settlement**

18        **Weighs in Favor of Approval.**

19     Notice to class members was provided under Rule 23(e).  On November 19,

20  2014, Heffler Claims Group sent 22,697 Class Notices via first class mail.  (Pappas

21  Decl., ¶ 12.)  Then on November 24, 2014, the additional 15,992 Class Notices were

22  sent via first class mail.  (*Id*. at ¶ 13.)  All class members were given the same Class

23  Notices and the same opportunity to object or opt-out.

24     As of this date, Heffler Claims Group received thirty-five (35) requests for

25  exclusions and one (1) objection to the Settlement.  (*Id*. at ¶¶ 15-16.)  The one

26  objection does not appear to have been any objection to the Settlement, but rather to

27  Defendant's conduct.  (*Id*. at Ex. D.; Nancy Barron Declaration, Dkt. No. 78, ¶ 6.)

28  Consequently, this objection had no bearing on the Court's determination of the

1  Settlement's fairness.

2  ### 5.  The Court Grants the Request for *Cy Pres* Nominees

3  The Parties acknowledge the likelihood that the entire amount of restitution

4  may not actually be returned to the class members; thus, leaving a remainder.  (Mot.,

5  p. 16-17.)  Consequently, the Parties agree to distribute the remaining funds to *cy pres*

6  recipients.[2]  (*Id.*)

7  "A cy pres award must be guided by (1) the objectives of the underlying

8  statute(s) and (2) the interests of the silent class members, and must not benefit a

9  group too remote from the plaintiff class."  *See Dennis v. Kellogg Co.*, 697 F.3d 858,

10  865 (9th Cir. 2012) (quotation marks omitted).

11  Here, the Parties propose to equally divide the remaining funds amongst four

12  (4) nonprofit organizations: Legal Aid Foundation of Los Angeles, California Rural

13  Legal Assistance Foundation, Public Counsel, and Bay Area Legal Aid.  (Mot., p. 16-

14  17.)  These recipients are appropriate because each organization provides legal

15  services to the low income California populous with respect to consumer protection

16  statutes.  (*See* Barron Decl., ¶ 13.)  Therefore, because the *cy pres* award is not

17  benefitting a remote group, the Court finds a relevant nexus between the *cy pres*

18  award and the class members herein.

19  Accordingly, the Court finds that the Settlement is fair, reasonable, and

20  adequate for the class members.

21  ### C. Attorneys' Fees

22  Plaintiffs' Counsel ("Counsel") seeks approval, under Rule 23(h), of their Class

23  Counsel fees.  The Parties agreed to $350,000 in attorneys' fees and $12,649.47 in

24  litigation costs.  (Fees Mot., p. 7.)  Defendant has not objected to the fees sought.

25

26

27  [2] The *cy pres* doctrine involves charitable gifts, and "although the doctrine originated in the area of wills as a way to effectuate the testator's intent in making charitable gifts, federal courts now

28  frequently apply it in the settlement of class actions...."  *Dennis*, 697 F.3d at 865 (citations omitted).

### 1. Legal Standard

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989), the Ninth Circuit described the equitable principle underlying such fee awards:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an <u>extra</u> reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.  The amount of such a reward is that which is deemed "reasonable" under the circumstances.

(emphasis in original; citations omitted).  The purpose of this "common fund" doctrine is to avoid unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).  Ultimately, "the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999).

### 2. Discussion

Courts acknowledge that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) ("most critical factor is the degree of success obtained").  "In a common fund case, the district court has discretion to apply either the lodestar method or the

1  percentage-of-the-fund method in calculating a fee award." *Fischel v. Equitable Life*

2  *Assurance Society of the United States*, 307 F.3d 997, 1006 (9th Cir. 2002).

3  　　The "'benchmark percentage should be adjusted, or replaced by a lodestar

4  calculation, when special circumstances indicate that the percentage recovery would

5  be either too small or too large in light of the hours devoted to the case or other

6  relevant factors.'" *Torrisi*, 8 F.3d at 1376 (citing *Six Mexican Workers v. Ariz. Citrus*

7  *Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)) (emphasis added).  The factors that

8  inform whether the benchmark percentage should be adjusted include: (1) the benefit

9  obtained for the class, (2) comparison with counsel's lodestar, (3) counsel's expended

10  effort, (4) counsel's experience and skill, (5) the complexity of the issues,  (6) the

11  risks of non-payment assumed by counsel, and (7) the reaction of the class.  *See In re*

12  *Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973-74 (N.D. Cal. 2001).

13  　　　　　　　**a.  The Requested Reward Is Reasonable and Appropriate**

14  　　This litigation asserted claims pursuant to California's Rees-Levering

15  Automobile Sales Finance Act, which operates under a fee shifting statute.  Cal. Civil

16  Code § 2983.4 ("[r]easonable attorney's fees and costs shall be awarded to the

17  prevailing party in any action on a contract or purchase order subject to the provisions

18  of this chapter…").  Consequently, under this statute, the lodestar method in

19  calculating fees is appropriate in this matter.

20  　　"[The lodestar] figure is calculated by multiplying the number of hours the

21  prevailing party reasonably expended on the litigation (as supported by adequate

22  documentation) by a reasonable hourly rate for the region and for the experience of

23  the lawyer." *In re Bluetooth Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir.

24  2011).

25  　　Here, the Settlement secures monetary relief and injunctive relief for a large

26  class of people, approximately 38,698 class members.  (Sandra Pappas Decl., Dkt. 75,

27  Ex. 2 ¶ 14; Dkt. No. 78, Ex. 1.)  Based on the secured relief and the size of the class,

28  Counsel has requested an attorneys' fees award under the following lodestar

calculation:

|  | Fees | Costs |
|---|---|---|
| Kemnitzer, Barron & Krieg | $270,345.00 | $12,474.47 |
| Trueblood Law Firm | $34,510.00 | $175.00 |
| Law Offices of Brandon Block | $2,986.50 | $0.00 |
| TOTAL | $307,841.50 | $12,649.47 |

(*See* Fees Mot., p. 7.)

### i.   *Lodestar* Cross Check

Courts often compare an attorney's lodestar with a fee request made under the percentage-of-the-common-fund method as a "cross-check" on the reasonableness of the requested fee.  *See Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1050 (9th Cir. 2002).  "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award."  *Vizcaino*, 290 F. 3d at 1050.

"The district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended*, 808 F.2d 1373 (9th Cir. 1987).  The Court has evaluated Counsel's lodestar rates and the supporting declarations, and determines that rates are reasonable for consumer class action attorneys in the same geographic market and of the same experience level as Counsel. (*See* Kemnitzer Decl., ¶¶ 1-4, 24.)

Focusing on the number of hours expended on the case, the Court concludes that the amount of work was necessary, particularly because this lawsuit has been litigated for close to two (2) years.  (Fees Mot., p. 3.)  Each member of Counsel has provided sufficient evidence to support the hours worked.  (*See* Kemnitzer;

1    Trueblood; Block Declarations, Dkt. Nos. 69, 70, 71.)

2        Here, the lodestar total is approximately $320,490.97.  (*See* Kemnitzer Decl., ¶

3    7.)  This is a low lodestar payment, because Counsel's requested fee amounts to less

4    than one percent (1%) of the class benefits.  The Class Settlement Benefits is highly

5    advantageous to the class members because it refunds sixty percent (60%) of the

6    collected $712,778.00 deficiency balances to the class and forbids Defendant from

7    collecting on the remaining $199,407,884.00 deficiency balances of the class (totaling

8    over $200,000,000.00 in relief).  (Fees Mot., p. 4.)  Counsel's requested fee is well

9    within—and considerably below—the benchmark recognized as appropriate in this

10   Circuit.  *See Hanlon*, 150 F.3d at 1029.  Consequently, in light of Counsel's award in

11   comparison to the favorable benefit due to the class, the Court finds that the

12   Settlement valuation crosscheck supports this fee award.

13                    **ii.    The Hourly Rates Charged and the Effort Expended**

14                        **Reflect Counsel's Experience and Skills**

15       The Settlement achieved in this case further demonstrates Counsel's skill and

16   warrants approval of the requested fees.  *See Cullen v. Whitman Medical Corp.*, 197

17   F.R.D. 136, 149 (E.D. Pa. 2000) ("The single clearest factor reflecting the quality of

18   class counsels' services to the class are the results obtained.") (alterations and

19   quotations omitted).  Counsel pursued this action primarily based upon theories of

20   state statutory laws.  (Fees Mot., p. 1.)  The path towards recovery is evidenced within

21   Counsel's Declarations.  (*See* Kemnitzer; Trueblood; Block Declarations, Dkt. Nos.

22   69, 70, 71.)  Counsel specializes in representing plaintiffs in consumer class actions.

23   (*See* Kemnitzer; Trueblood; Block Declarations, Dkt. Nos. 69, 70, 71.)  Each member

24   of Counsel provides their own set of backgrounds and skills in litigating Rees-

25   Levering Act cases. The high level of qualifications and experience amongst Counsel

26   is ample proof of the skill of Counsel.

27

28

### iii.    The Risks of Litigation and the Contingent Nature of the Fee Support the Requested Reward

Courts recognize that the risk is an important factor in determining a fee award. *See In re Washington*, 19 F.3d at 1299-1300.  Truly, Counsel's assumed risks are important in deciding a proper fee award.  *See In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (justifying the attorney's fees partly due to counsel spending several years litigating matter without certainty of compensation).

Here, Counsel took a sizable risk in litigating this case.  (*See* Kemnitzer Decl., ¶ 37.)  Counsel represented the class on a contingent basis, while paying for all the incurred expenses.  There was no guarantee that any amount would be recovered.  Consequently, there was a significant chance that Counsel would neither be compensated for the time they expended nor reimbursed for the expenses they expended.  Furthermore, the risk was spread across multiple law firms.  (*See* Kemnitzer; Trueblood; Block Declarations, Dkt. Nos. 69, 70, 71 (three (3) firms)); *see also Medical X-Ray*, 1998 WL 661515, at *7 (seventeen (17) firms).  Nonetheless, Lead Counsel incurred the substantial portion of the risk based on the hours exhausted in litigating the case.  (Kemnitzer Decl., Ex. B.)

Additionally, Lead Counsel spent hundreds of hours pursuing this case on a pure contingency basis.  (Kemnitzer Decl., ¶ 8.)  "Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award."  *In re Heritage Bond Litigation*, No. 02–ML–1475 DT, CV 01–5752 DT (RCX), CV 02–382 DT(RCX), CV 02–993 DT(RCX), CV 02–2745 DT(RCX), CV 02–6484 DT(RCX), CV 02–6841 DT(RCX), CV 02–9221 DT(RCX), CV 02–6512 DT(RCX), 2005 WL 1594403, at *21 (C.D. Cal. 2005).  Therefore, given the considerable risk in litigating this consumer class action for close to two (2) years wholly on a contingent-fee basis coupled with the uncertainty of outcomes of legal actions, the Court finds that the requested fee is

14.

justified.  (Fees Mot., p. 3.)

### iv.   Counsel's Costs were Reasonable and Necessary to Warrant Reimbursement

The appropriate analysis to apply in deciding which expenses are compensable is whether the particular costs are the type attorneys typically billed to paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (citations omitted).  "Thus [reimbursement of] reasonable expenses, though greater than taxable costs, may be proper." *Id.*

Here, Counsel seeks reimbursement of $12,649.47 in litigation costs.  (Fees Mot., p. 7.)  The major categories of expenses include: meeting and conferring with Co-Counsel and the Class Representatives, mediation fees, travel expenses, discovery fees, and drafting and reviewing documents.  (*See* Kemnitzer Decl., Dkt. No. 69-2, Ex. B.).  In reviewing the supporting declarations and documentation, the Court determines that Counsel's litigation expenses were necessary and reasonably incurred, especially considering that this case has been litigated for close to two (2) years. (Fees Mot., p. 3.)  Therefore, as itemized in the accompanying declarations, Counsel's request for costs reimbursement is warranted.

### v.   The Class Representatives Warrant Service Fees

Counsel seeks the Court's approval of a Service Award to each of the Class Representatives.  (Fees Mot., p. 11.)  Counsel argues that the Service Awards are necessary and appropriate to reward the Class Representatives for their considerable time and effort inherent in serving as the named plaintiffs.  (*Id*.)

Many courts embrace service or "incentive" awards because class representatives create enormous benefits for the entire class.  *See In re Mego*, 213 F.3d at 463 (9th Cir. 2000); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1994).  By agreeing to represent a class, the named plaintiffs gain minimal monetary relief compared to the benefits bestowed upon the entire class. Nonetheless, acting as a Class Representative bears an added risk and burden that is

15.

not faced as an unnamed class member who simply files claims after the case is settled.  *See*, *e.g.*, *Linney*, 1997 WL 450064, at *7 ("Incentive fees for class representatives serve much the same function as attorneys' fees do in the class action context: they provide the economic incentive necessary to ensure that meritorious actions are prosecuted.").

Counsel contends that the Class Representatives have consistently contributed and been involved during the course of this litigation.  (Fees Mot., p. 12.)  Thus, the Class Representatives are deserving of the Service Awards.  The Court has reviewed the Class Representatives' declarations regarding their involvement within this case, and agrees that their efforts merit incentive awards.  (Thomas Vitrano Decl., Dkt. No. 74, ¶¶ 13, 15-17; Belinda Vitrano Decl., Dkt. No. 73, ¶¶ 13-15; John Santos Decl., Dkt. No. 72, ¶¶ 8-10.)

The Class Representatives shall be awarded $2,500.00 each pursuant to the Settlement Agreement.  (Dkt. No. 78-1.)

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Final Approval of Settlement and hereby **APPROVES** the Settlement.  The Court also **GRANTS** the Motion for Attorneys' Fees.

**IT IS SO ORDERED.**

Dated:  February 18, 2015          _____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

16.

**Appendix A**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS VITRANO, BELINDA VITRANO, and JOHN SANTOS individually and on behalf of others similarly situated, | **Case No. 2:13-cv-02492-AB-MRW** |
| | CLASS ACTION |
| Plaintiffs, | **REVISED ~~[PROPOSED]~~ ORDER CERTIFYING CLASS FOR SETTLEMENT PURPOSES, GRANTING FINAL APPROVAL OF CLASS SETTLEMENT, AND ENTERING FINAL JUDGMENT** |
| vs. | |
| SANTANDER CONSUMER USA INC., | |
| Defendants, | |
| | Unlimited Civil Case |
| | **Date:  February 2, 2015** |
| _____/ | **Time: 10:00 a.m.** |
| | **Dept.:  Courtroom 4 (Spring)** |

THIS MATTER HAVING come before the Court for a hearing on February 2, 2015 pursuant to the Motion for Final Approval, filed to determine whether the Settlement Agreement between the named Plaintiffs ("Plaintiffs"), THOMAS VITRANO, BELINDA VITRANO, and JOHN SANTOS individually and on behalf of the proposed Settlement Class ("Class"), and Defendant SANTANDER CONSUMER USA, INC. is fair and reasonable, and should be approved as being in the best interests of the Class, and for the purpose of determining attorneys' fees and costs to be awarded, and for approval of all other matters contained therein.  Notice of the hearing, the Settlement and application for attorneys' fees and reimbursement of expenses having been given pursuant to the Settlement and as set forth in this Court's

17.

Preliminary Approval Order of October 20, 2014; all persons present or represented at the hearing, who were entitled to be heard having been given an opportunity to be heard; counsel for the parties having appeared in support of the Settlement; and the Court having considered all documents filed in support of the Settlement and fully considered all matters raised, all exhibits and affidavits filed and all evidence received at the hearing, all other papers and documents comprising the record herein, and all oral arguments presented to the Court,

**IT IS ORDERED, ADJUDGED AND DECREED** on this 6 day of February, 2015, that:

1.     This Final Judgment incorporates the Settlement Agreement, and the capitalized terms used in this Order shall have the meanings and/or definitions given to them in the Settlement Agreement, as submitted to the Court with the Motion for Preliminary Approval of Class Action Settlement.

2.     This Court has jurisdiction over the subject matter of this action and over all parties to this action, including all members of the Settlement Class as that term is defined herein.

3.     This Court certifies this action, for settlement purposes only, as a Class Action.

4.     The following Settlement Class, provisionally certified by the Court in its Order dated October 20, 2014, is hereby certified under Federal Rule of Civil Procedure 23(c) and (e) for settlement purposes only, and is hereinafter referred to as the "Class":

The phrase "Settlement Class" is defined as all consumers:

> (a) purchased a motor vehicle and, as part of that transaction, entered into an agreement subject to California's Rees-Levering Automobile Sales Finance Act, Civil Code §2981, *et seq.*;
>
> (b) whose motor vehicle was repossessed or voluntarily surrendered;

18.

(c) who were issued a NOI by SANTANDER from July 1, 2011 to July 31, 2014 or to whom SANTANDER failed to provide an NOI within 60 days of repossession; and

(d) against whose account a deficiency balance was assessed.
Excluded from the Settlement Class are: (a) persons who have had their deficiency balances discharged by an order of a bankruptcy court; and (b) any persons against whom Santander has obtained a deficiency judgment.

5.    This Court finds on the record before it that the Class meets the requirements for class certification for settlement purposes as the Class is so numerous that joinder of all members is impracticable.

6.    This Court finds on the record before it that the Class meets the requirement for class certification for settlement purposes as questions of law or fact common to the issues to be reviewed in connection with the Settlement predominate over the questions affecting only individual members for the purpose of implementing the Settlement in accordance with the Settlement Agreement.

7.    This Court finds on the record before it that the Class meets the requirement for class certification for settlement purposes as Plaintiffs' claims are typical of the claims of the Class as a whole.

8.    This Court finds on the record before it, that the Class meets the requirements for class certification for settlement purposes as Plaintiffs and their Class Counsel have adequately represented and will continue to adequately represent and protect the interests of the Class.

9.    This Court finds on the record before it that the Class is appropriate for certification for settlement purposes as certification of the Class for settlement purposes is superior to other available methods for the fair and efficient adjudication of the issues before this Court at this time. Manageability issues do not prevent certification here because there will be no trial.

10.    The individual Notice of Class Action Settlement ("Class Notice") by mail, given to each member of the Class at updated mailing addresses, constitutes the best notice practicable and is in full compliance with the requirements of the Federal Rules of Civil Procedure and due process of

19.

law.

11.     This Court finds that the Settlement and the Settlement Agreement and Release ("Settlement Agreement") are the product of arm's length negotiations between the parties and that the terms thereof are fair, reasonable, adequate, and in the best interests of the Class and are therefore approved and incorporated herein by the Court.

12.     The Settlement and Settlement Agreement should be implemented and consummated in accordance with the terms of the Settlement Agreement.  To the extent already implemented by the parties, such implementation is hereby approved and ratified by the Court.

13.     SANTANDER, by operation of state law, shall not take any further steps to collect any amounts purportedly owed by any consumer who:

(a) purchased a motor vehicle and, as part of that transaction, entered into an agreement subject to California's Rees-Levering Automobile Sales Finance Act, Civil Code §2981, et seq.;

(b) whose motor vehicle was repossessed or voluntarily surrendered;

(c) who were issued a NOI by SANTANDER from July 1, 2011 to July 31, 2014 or to whom SANTANDER failed to  provide an NOI within 60 days of repossession; and

(d) against whose account a deficiency balance was assessed.

Excluded from the Settlement Class are:  (a) persons who have had their deficiency balances discharged by an order of a bankruptcy court; and (b) any persons against whom Santander has obtained a deficiency judgment.

14.     Upon the date of Final Judgment, the Plaintiff and all Settlement Class Members and their heirs, executors, estates, predecessors, successors, assigns, agents and representatives shall be deemed to have jointly and severally released and forever discharged SANTANDER from any and all Released Claims as that term is defined in the Settlement Agreement.

15.     The terms of the Agreement and this Judgment shall be forever binding on, and shall have *res judicata* effect in any pending or future lawsuits or proceedings that may be brought or maintained by or on behalf of any Class Members.  This Court hereby bars and enjoins: (i) all Class

Members, and all persons acting on behalf of, or in concert or participation with such Class Members, from filing, commencing, prosecuting, intervening in, or participating in, any lawsuit in any jurisdiction on behalf of any Class Member, based upon or asserting any of the Released Claims; and (ii) all Class Members, and all persons acting on behalf of or in concert or participation with such Class Members, from bringing a class action or seeking to certify a class which includes such Class Members, in any lawsuit based upon or asserting any of the Released Claims.

16. Attached to this Judgment as **Exhibit 1** is a true and correct list of all Class Members who timely submitted Requests for Exclusion. No Class Members, other than those listed in **Exhibit 1**, are excluded from the Class, or from the effect of this Judgment.

17. It is expressly determined that there is no just reason for delay and the entry of this Judgment expressly is hereby directed. In the event that this Judgment is appealed, its mandate will automatically be stayed until and unless the Judgment is affirmed in its entirety by the court of last resort to which such appeal(s) has (have) been taken and such affirmance is no longer subject to further appeal or review.

18. This Final Order and Judgment is final for purposes of appeal and may be appealed, and the Clerk is hereby directed to enter Judgment thereon.

19. Attorneys' fees and reimbursement of expenses to counsel for the Class in the amount of $350,000.00 is hereby approved as fair and reasonable and SANTANDER shall make such payments in accordance with the terms of the Settlement Agreement.

20. A service award of $2,500.00 to each class representative is hereby approved as fair and reasonable and SANTANDER shall make such payments in accordance with the terms of the Settlement Agreement.

21. The Class Administrator will pay as *cy pres* the residue of any un-cashed checks distributed, pursuant to the Settlement Agreement and Release to Legal Aid Foundation of Los

Angeles, California Rural Legal Assistance Foundation, Public Counsel, and Bay Area Legal Aid, non-profit organizations consistent with California Code of Civil Procedure §384.

22.   Any and all objections to the Settlement and the Settlement Agreement are overruled as being without merit.

23.   In the event that the Settlement does not become effective in accordance with the terms of the Settlement Agreement, then this Judgment shall be rendered null and void and be vacated and the Settlement Agreement and all orders entered in connection therewith shall be rendered null and void.

24.   The Parties are directed to carry out their obligations under the Settlement Agreement.

25.   For purposes of this Class Settlement only, Santander is willing to acknowledge and the Court finds that the NOI as prepared and sent to Settlement Class members did not strictly comply with the requirements of Civil Code § 2983.2 pertaining to NOIs, and SANTANDER is barred by operation of state law and Civil Code §2983.2 from collecting deficiency balances from the Settlement Class on accounts that are subject to this Class Settlement.

26.   Jurisdiction is hereby reserved by this Court to assure compliance with all terms of this Settlement, in accordance with the Settlement Agreement and this Order. The Court hereby sets a Compliance Hearing date of June 15, 2015 at 10:00 am.  Five (5) days prior thereto the Class Administrator and Santander shall each file a declaration stating that they have complied with all terms of the Settlement and distribution is complete.

///

///

///

///

22.

27.     Class Counsel shall serve a copy of this Order on all named parties or their

counsel within five (5) days of receipt.

**IT SO ORDERED.**

Dated: February 18, 2015

_____
The Honorable André Birotte Jr.
United States District Court

23.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**

LIST OF CLASS MEMBERS WHO TIMELY REQUESTED EXCLUSION

Mario A. Jones

Gonzalo V. Martinez

Azucena Mendez

Sandy My Nguyen

Deborah M. Green

Maria D. Cardenas

Gloria Saldivia

Daniela Mihai

Gregorio T. Izquierdo

Daniel Aragon

Roderick D. Williams

Karlina T. Jones

Sandra C. Cisneros

Sophia S. Amezquita

Angie T. Woods

Philbert Washington

Maximo Correa

Deserie Meza

Moe Sagoleh

Tina M. Corkern

Yong Ji

Dezirai T. Broussard

Alfredo A. Ramirez

Keith Y. Lopez

Jeffrey M. Edwards, Dec'd.
c/o Reita Edwards, Exec.

Joseph T. Koch

Ronald L. Coleman

Titus E. Houston

Martha Samaniego

Hugo Samaniego

Helene Ackerman

Angelica Guillen

Lida Ko

Henry Daniels

Brenda Daniels

25.